IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY RUTKOWSKI,<br><br>Defendant (01). | CR. NO. 00-000147 JAO-01<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE** |

**ORDER GRANTING DEFENDANT'S MOTION
TO REDUCE SENTENCE**

Defendant Larry Rutkowski ("Rutkowski") seeks a reduction of his life sentence to a term of time served, pursuant to 18 U.S.C. § 3582(c)(1)(A) ("the Compassionate Release Statute"). *See* ECF No. 329 ("Motion"). He argues that, had he been sentenced today, he would not have faced a mandatory life sentence due to statutory amendments to the mandatory minimum sentences outlined in the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), which he concedes do not retroactively apply to him. The question before the Court, then, is whether non-retroactive changes to the FSA can present extraordinary and compelling circumstances for compassionate release under the Compassionate

Release Statute. The Court answers that question in the affirmative, and, after evaluating the Section 3553(a) factors, GRANTS Rutkowski's Motion.

I.   BACKGROUND

A.   Procedural History

On April 13, 2000, a Grand Jury returned an indictment against Rutkowski and others, charging him with Count 1 — conspiracy to possess with intent to distribute in excess of 50 grams, to wit, approximately five pounds of methamphetamine, in violation of 21 U.S.C. § 846; and Count 2 — possession with intent to distribute in excess of 50 grams, to wit, approximately five pounds of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. ECF No. 39. He was detained pending trial. ECF No. 31. On July 17, 2000, the Government filed a Special Information as to prior convictions pursuant to 21 U.S.C. § 851, ECF No. 75, and later filed an Amendment to the Special Information, giving notice of its intent to seek enhanced penalties for two crimes: a 1996 Hawai'i conviction for Promoting a Dangerous Drug in the First Degree, and a 1996 Hawai'i conviction for Facilitating the Commission of Promoting a Dangerous Drug in the First Degree. ECF No. 132. Rutkowski was found guilty of both counts after a six-day trial. ECF Nos. 182, 183. On May 31, 2002, Rutkowski received a mandatory term of life in prison on both counts, to be

served concurrently.  ECF Nos. 276, 285.  The Court also imposed two concurrent ten-year terms of supervised release.  *Id*.

Rutkowski appealed from his judgment and sentence and, in a Memorandum Disposition, the Ninth Circuit affirmed both, determining, among other things, that his life sentence did not violate the Eighth Amendment's protection against cruel and unusual punishment.  ECF No. 301 at 6–7; *see also United States v. Rutkowski*, 86 F. App'x 227, 230 (9th Cir. 2003).  Rutkowski met a similar outcome in a subsequent Section 2255 petition.  *See* ECF Nos. 308 (denying petition), 323 (Ninth Circuit's denial of certificate of appealability); *see also United States v. Ruthkowski,*[1] No. 07-15284 (9th Cir.) (Dkt. No. 7 dated Aug. 2, 2007).

On February 12, 2022, Rutkowski sought compassionate release from the warden at USP Terre Haute.  ECF No. 329-4.  On March 16, 2022, he filed the instant Motion to Reduce Sentence, having apparently received no response from the warden.  ECF No. 329.  The Government filed an opposition on April 14, 2022, ECF. No. 343, and Rutkowski submitted a reply on April 22, 2022.  ECF No. 344.

---

[1] This is how Rutkowski's name is spelled in the Ninth Circuit case.

B.  Defendant's Background

1.  Defendant's Criminal History

Rutkowski was 30 years old when sentenced. At the time, in addition to the two prior convictions alleged in the Amended Special Information, which are addressed immediately below, he also had a conviction for Reckless Driving. ECF No. 329-2.

a.  The Promoting A Dangerous Drug In The First Degree Conviction

On July 27, 1994, Rutkowski pleaded guilty to the crime of Promoting a Dangerous Drug in the First Degree, a violation of Hawai'i Revised Statutes ("HRS") § 712-1241(1)(b), a class A felony, and received a sentence of 10 years of probation, with a one-year jail term. ECF No. 329-1 at 4, 57. In 2004 — after he was sentenced in the instant case — he was resentenced in that state case to 20 years in prison for a revocation of his probation term (apparently for the instant case), to run concurrent with any other sentence he was serving. *Id.* at 72.

b.  The Conviction For Accomplice To Promoting A Dangerous Drug In The First Degree

On April 23, 1996, Rutkowski pleaded nolo contendere to a crime, the exact title of which is not clear from the record. *Compare* ECF No. 329-2 at 24 (referring to a no contest plea to "Complicity to Promote a Dangerous Drug in the First Degree"), *with id.* at 27 (referring to the charge as "Facilitating the

4

Commission of the Offenses of Promoting a Dangerous Drug in the First Degree"), *and id.* at 2 (referring to the charge as "HRS 702-222-Accomplice HRS 712-1241/1A – PROM DANG DR1A"). In any event, it appears to have involved the facilitation of or serving as an accomplice to Promoting a Dangerous Drug in the First Degree, a violation of HRS §§ 702-222 and 712-1241(1)(a), a class A felony. ECF No. 329-2 at 2. He received the same sentence for this crime as the earlier drug offense, *id*. at 27, which was to run concurrent to that prior sentence, *id.* at 28. It appears that, for this conviction, he was not subject to a probation violation related to the instant case, and so served no more than twelve months' incarceration.

    2.  Defendant's Incarceration Behavior

  Rutkowski has had a somewhat mixed history while incarcerated. Beginning in 2004, he started taking a wide variety of courses, ranging from Finance/Consumer Skills to Rivers of the United States, to Pre-Algebra. ECF No. 329-5. He completed drug education programs, *see id.*, and according to counsel, is currently enrolled in BOP's Life Connections Program, "a residential, multi-faith restorative justice program" with an intensive eighteen-month curriculum that is available only in a limited number of facilities. ECF No. 329 at 33–34. Counsel also reports that Rutkowski voluntarily transferred to USP Terra Haute to engage in this opportunity. *Id.* at 34.

But he has not been a model inmate. He has had eight violations since 2006, the most significant being assaulting without serious injury in 2016. *See* ECF No. 329-6. The bulk of his infractions relate to the possession of drugs or alcohol while in custody, and his last violation was nearly four years ago. *Id*.

II.   DISCUSSION

   A.   The First Step Act

Title 18, United States Code, Section 3582(c)(1)(A), allows courts to grant compassionate release motions brought either by the Director of the Bureau of Prisons or an incarcerated defendant so long as certain requirements are met:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,[2] whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[2] It is uncontested that Rutkowski exhausted his administrative remedies as his motion to the warden at his facility went unanswered for at least 30 days.

18 U.S.C. § 3582(c)(1)(A) (2018).  The Ninth Circuit has held that United States Sentencing Guidelines Manual ("USSG") section 1B1.13 (the guideline provision that addresses compassionate release) is not such an "applicable policy statement" because it only relates to motions brought by the Bureau of Prisons.  *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  As such, the question before the Court is whether "extraordinary and compelling reasons warrant [the] reduction" requested.

Rutkowski contends that the FSA amendments that affect the mandatory minimum sentence regime offer the extraordinary and compelling reasons for the requested sentence because of the significant difference between the original mandatory minimum imposed in this case and the sentence he would have faced today.  *See* ECF No. 329 at 17.  The Government counters that such amendments were not retroactive and so do not amount to extraordinary and compelling reasons for compassionate release.  *See* ECF No. 343 at 9–14.  It is necessary, then, to examine both the differences between Rutkowski's original sentence and the type of sentence he might have received today, and whether the FSA amendments can serve as bases for compassionate release.

      B.    What Defendant Rutkowski's Mandatory Minimum And Guideline Range Would Have Been Had He Been Sentenced Today

In an effort to reduce harsh mandatory minimum sentences for drug offenses, *see* 164 Cong. Rec. S7640–50 (daily ed. Dec. 17, 2018), Congress did

two things in the FSA that are relevant here:  (1) it reduced the mandatory minimum sentences for those who had prior relevant felony drug convictions, and (2) it redefined what prior drug convictions are required for increased penalties ("enhancing conviction" or "enhancing felony").  *See* FSA § 401, 132 Stat. at 5220–21; *see also generally* Congressional Research Service, *The First Step Act of 2018:  An Overview* (Mar. 4, 2019), https://crsreports.congress.gov/product/pdf/R/R45558.

When Rutkowski was sentenced, a defendant convicted of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and for whom the Government had proved a prior enhancing conviction, was subject to a 20-year mandatory minimum sentence.  *See* FSA § 401, 132 Stat. at 5220–21 (striking text).  Pursuant to the FSA, that minimum term was reduced to fifteen years.  *See id.* (inserting text)  Similarly, before the enactment of the FSA, a defendant — like Rutkowski — with two such prior enhancing convictions faced a mandatory term of life in prison when charged with a Section 841(b)(1)(A) offense.  *See id.*  Congress reduced that mandatory minimum term to twenty-five years.  *See id.*

Just as significant here, what qualifies as enhancing felonies changed.  Whereas, when Rutkowski was sentenced, those felonies could be (among others) "a[ny] felony drug offense," 21 U.S.C. § 841(b)(1)(A) (2000), the FSA restricted such prior enhancing convictions to "serious drug felon[ies]" as defined in 21

8

U.S.C. § 802(57) and 18 U.S.C. § 924(e)(2).  FSA § 401, 132 Stat. at 5220–21.  "Serious drug felon[ies]" include state convictions involving the manufacture, distribution, or possession with intent to distribute a controlled substance for which the maximum term of imprisonment is ten years or more, *see* 18 U.S.C. § 924(e)(2)(A), and for which the offender served a term of imprisonment of more than twelve months.  *See* 21 U.S.C. § 802(57)(A).  Further, the defendant must have been released from incarceration within fifteen years of the commencement of the instant crime for which he is being sentenced.  *See* 21 U.S.C. § 802(57)(B).  This means that Rutkowski would not have faced a mandatory life sentence today — a fact that the Government does not contest.  In fact, the Government does not challenge Rutkowski's argument that neither of his prior drug felonies would serve as enhancing felonies under Section 841(b)(1) today.

Indeed, as asserted by Rutkowski, *see* ECF No. 329 at 11–12, neither of his prior convictions would constitute a serious drug felony in 2022 because, for both of his prior convictions, he was sentenced to a term of imprisonment of not more than twelve months.  While, at least for the Promoting a Dangerous Drug in the First Degree conviction, he received additional time for a probation violation, *see* ECF No. 329-1 at 72, that probation violation was the instant crime, and he was not sentenced to that additional time until after sentence was imposed in this case.  Notably, the Presentence Report makes no mention of the probation violation.  As

9

such, the Government could not now file any Section 851 information against Rutkowski, meaning that the mandatory minimum sentence he would face today is ten years based on drug quantity, and not on any prior conviction. *See* 18 U.S.C. § 841(b)(1)(A)(viii).

Rutkowski's advisory guideline range would also have been dramatically lower. Were it not for the mandatory life sentence, his range when sentenced in 2002 based on a criminal history category of IV and total offense level of 38, would have been 324–405 months. Any post-trial range today — without a safety valve proffer — would be the same, *i.e.*, 27 years at the low-end. And, as Rutkowski points out and the Government does not contest, the FSA amendments to the safety valve statute would have made him safety valve eligible today, assuming he agreed to sit for the required proffer, rendering the advisory guideline range to be 262 months at the low-end, or a sentence he has already served.[3] *See* ECF No. 329 at 15–16.

> C. Whether A Non-Retroactive Change In Sentencing Statutes Can Serve As An Extraordinary And Compelling Reason For Compassionate Release

As stated above, the Government does not contest the fact that Rutkowski's prior enhancing drug felonies would no longer amount to enhancing felonies today.

---

[3] The Court does not hazard a guess as to whether Rutkowski would have been willing to submit to such a proffer.

Rather, the Government focuses most of its opposition on the contention that a non-retroactive change in sentencing statutes cannot serve as an extraordinary and compelling reason for compassionate release under the Compassionate Release Statute. But the plain language of the statute suggests otherwise.

The text of the FSA does not preclude an examination of the difference between a mandatory minimum sentence under the new sentencing regime and one previously imposed when evaluating a compassionate release motion. The Government states that "Congress expressly declined to make [the amendments] retroactive" and that considering such amendments a basis for compassionate release "would run counter to Congress's clear intention that such a reduction should not take place." ECF No. 343 at 10. But the language of the statute is not so direct as that. Rather, the statute states that the FSA amendments "apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *See* FSA § 401(c), 132 Stat. at 5221. While the statute could have explicitly indicated that the FSA amendments were not to be applied retroactively, it did not do so. As the First Circuit explained, "[n]either this provision nor any other provision in the FSA indicates that Congress meant to deny the possibility of a sentence reduction, on a case-by-case basis, . . . premised in part on the fact that [a defendant] may not have been subject to a mandatory sentence of life imprisonment" had he been sentenced

11

today. *United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022). Some of the other circuits have reached the same conclusion. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), for example, the Fourth Circuit explained that the lack of any retroactivity language in the statute does not preclude judges from considering the amendments themselves when evaluating compassionate release motions:

> The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release[.] [T]here is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases.

*Id.* at 286–87 (citations omitted); *see also United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021). Indeed, "[n]owhere has Congress expressly prohibited district courts from considering non-retroactive changes in sentencing law like those in section 401 of the FSA." *Ruvalcaba*, 26 F.4th at 25.

The Circuits that have held that district courts can consider what sentence could have been imposed in a post-FSA world have placed some limitations on when extraordinary and compelling circumstances exist. They have generally explained that the originally imposed sentence would need to be severe or unusually long to warrant consideration and, similarly, that district courts should also evaluate the difference between the originally imposed sentence and modern-day sentences. *See, e.g.*, *McCoy*, 981 F.3d at 286 ("[W]e find that the district

courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' . . . sentences and the extent of the disparity[.]"); *United States v. Maumau*, 993 F.3d 821, 837 & n.7 (10th Cir. 2021) (affirming amended judgment of district court as its finding of "'extraordinary and compelling reasons' was based on its individualized review of all the circumstances," including "the fact that [the defendant], if sentenced today, would not be subject to such a long term of imprisonment" (some internal quotation marks, alteration, and citations omitted).

  There are indeed other Circuits that have held otherwise. *See*, *e.g.*, *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Andrews*, 12 F.4th 261–62 (3d Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). But those decisions read the FSA too narrowly; indeed, the entire purpose of the FSA was to alleviate the sort of unduly severe sentences that have plagued our criminal justice system for too long. *See* 164 Cong. Rec. S7640–50 (daily ed. Dec. 17, 2018); *see also United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020) ("That disparity [between the sentence the defendant received and the sentence he would have received after the First Step Act] is primarily the result of Congress' conclusion that sentences like [the defendant's] are unfair and unnecessary[.]" (footnote omitted)).

And, while the Ninth Circuit has yet to decide this question, the Court is also persuaded by the rationale of other district court orders granting compassionate release. In this district, some of the judges addressing this question have determined that courts can consider the length of the sentence compared to what sentence a defendant would have received under the FSA, at least where a sentence is unusually long and there is a gross disparity between sentences. *See, e.g.*, *United States v. Henry Lii*, 528 F. Supp. 3d 1153, 1163 (D. Haw. 2021); *United States v. Francis Lii*, CR. NO. 07-00423 HG-01, 2021 WL 5828370, at *5 (D. Haw. Dec. 8, 2021); *United States v. Bremer*, CR. NO. 17-00276 LEK, 2022 WL 1229963, at *6 (D. Haw. Apr. 26, 2022). Judges in other districts have come to similar conclusions. *See*, *e.g.*, *United States v. Quinn*, 467 F. Supp. 3d 824, 829 (N.D. Cal. 2020); *United States v. Blanco*, Case No. 93-cr-20042-2 CW, 2020 WL 7350414, at *5 (S.D. Cal. Dec. 14, 2020); *cf. United States v. Owens*, 996 F.3d 755, 762 (6th Cir. 2021) (collecting district court cases that have "taken the same approach as *McGee* and *Maumau* and have concluded that a defendant's excessive sentence because of mandatory-minimum sentences since mitigated by the First Step Act may, alongside other factors, justify compassionate release"), *abrogated by United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021).

D.  Whether Rutkowski's Sentence As Compared To A Modern-day Sentence Constitutes An Extraordinary And Compelling Reason Under The Compassionate Release Statute.

Having concluded that it can consider the sentence Rutkowski might have received today, the Court now engages in an individualized assessment of whether that sentence is so significantly disparate from the modern sentencing scheme as to warrant a finding of extraordinary and compelling reasons under the statute. *See Bremer*, 2022 WL 1229963, at *6.

Rutkowski was involved in a conspiracy to distribute somewhere between five and fifteen pounds of methamphetamine. *See* ECF No. 39 (indicating violations involved approximately 5 pounds); ECF No. 283 ¶ 18 (indicating 10 pounds had been possessed); ECF No. 283 ¶ 26 (indicating 6 pounds had been recovered). He did not possess a firearm in the course of the crime. He did not use threats or violence to commit his crime. While it is true that he discouraged cooperating witnesses from testifying at trial, there is no indication that he was a kingpin of any drug trafficking ring. He has served more than 22 years of his life sentence, or more than twice the ten-year mandatory minimum sentence he would face today. And while the low-end of his guideline range today would be 27 years, that term of imprisonment, too, appears far more severe than warranted given Rutkowski's personal history and characteristics and the nature and circumstances of his offense. The Court concludes that a life sentence for his conduct was

unusually long, and that the disparity between sentences so significant as to warrant a finding that these are extraordinary and compelling circumstances.

      E.      The 3553(a) Factors

If a court finds extraordinary and compelling reasons for compassionate release, the inquiry does not end: courts must then consider the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A). Unsurprisingly, the evaluation of those factors overlaps with the extraordinary and compelling reasons analysis.

      1.      Nature And Circumstances Of The Offense

As explained, Defendant was a mid-level dealer of drug amounts that seem somewhat ordinary. This is not to say that five to fifteen pounds of methamphetamine would not wreak havoc: indeed, they can and likely did. And Defendant's involvement in this crime surely resulted in severe trauma to families. But in the scheme of drug traffickers, Defendant was neither the most serious nor the least: his role was typical of someone who is more than a street dealer but less than a mastermind. This, coupled with the fact that he did not use a firearm, threats, or violence to conduct his illegal activity causes the Court to conclude that the nature and circumstances of his offense weigh in favor of release based on the time he has already served and the other factors outlined here.

    2.  History And Characteristics Of The Defendant

Rutkowski was not a model citizen prior to committing this crime, nor has he been a model inmate. However, having been sentenced twice before to only a year in prison on each count demonstrates that his criminal history was neither extensive nor particularly serious. None of his criminal history points were for violent crimes or crimes involving firearms. And while he has managed to rack up 12 violations while incarcerated, that averages about one every-other year, with the last committed four years ago. The Government appropriately points to the fact that Rutkowski's last infraction was for possessing methamphetamine while incarcerated. This of course is a serious concern. But, in the four years that have passed, he has made genuine efforts to improve himself, including asking for and obtaining a transfer to a facility where he can engage in more intensive rehabilitation.

    3.  Promoting Just Sentences And Avoiding Disparate Treatment

Rutkowski has served more than two decades in prison for committing non-violent drug crimes. He has paid his price for what he did. He would face a significantly lower mandatory minimum today, and for good reason: as the FSA contemplated, a life sentence for a non-violent drug crime that did not involve weapons, committed by someone who had no violent history or history of gun crimes, is severe, unusually long, and unjust. The Government's suggestion that

the Court deny the Motion and allow Rutkowski to prove his rehabilitation before considering another such motion ignores the fact that he has already served a long sentence and places too little emphasis on whether the original mandatory minimum sentence in this case was fair.

III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Reduce Sentence, ECF No. 329.  It is FURTHER ORDERED that:

1. Rutkowski's sentence of incarceration is reduced to time served plus eight days from the date of this Order.

2. Upon his release from custody, Rutkowski shall commence serving his ten-year term of supervised release as to Count 1 and Count 2, as previously imposed; and shall abide by all mandatory, standard, and special conditions as approved and ordered by the Court on May 19, 2022.  *See* ECF No. 346.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 19, 2022.



Jill A. Otake
United States District Judge

Crim. No. 00-000147 JAO-01, *United States v. Rutkowski*; Order Granting Defendant's Motion to Reduce Sentence

18